**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ELIAS SALLOUM, | |
| Plaintiff, | Civil Action No.: 25-00334 (ES) |
| v. | OPINION |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., | |
| Defendants. | |

SALAS, DISTRICT JUDGE

Before the Court is Defendants United States Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Alejandro Mayorkas, Ur M. Jaddou, and Susan Raufer's (collectively "Defendants") motion to dismiss Plaintiff Elias Salloum's ("Plaintiff") Complaint. (D.E. No. 15). The Court has carefully considered the parties' submissions, (D.E. No. 15-1 ("Mov. Br."), D.E. No. 16 ("Opp. Br.") & D.E. No. 20 ("Reply Br.")), as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** Defendants' motion and dismisses Plaintiff's Complaint *without prejudice*.

## I.    BACKGROUND

### A.    Statutory Background

The Immigration and Nationality Act (the "INA") provides that immigrants may apply for asylum within one year of arrival in the United States. *See* 8 U.S.C. § 1158(a). To obtain relief, an asylum applicant must establish that he or she either experienced past persecution or has a well-founded fear of future persecution on account of his or her race, religion, nationality, membership

in a particular social group, or political opinion. *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). If the applicant satisfies this burden, the Secretary of Homeland Security or the Attorney General has discretion to grant asylum. *Id.* § 1158(b)(1)(A). The INA instructs that, absent exceptional circumstances, an initial interview of an asylum applicant shall commence within forty-five days of the filing of the application and that adjudication of the application shall be completed within 180 days of its filing. *Id.* § 1158(d)(5)(A)(ii)-(iii). However, § 1158(d)(7)—entitled "No private right of action"— expressly provides that "[n]othing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

### B.    Factual Background

Plaintiff alleges that he applied for asylum in the United States, and that Defendant USCIS confirmed receipt of that application on July 29, 2021. (D.E. No. 1 ("Compl.") ¶¶ 1 & 12). Plaintiff further alleges that the asylum application process "includes collecting biometric data for the applicant, conducting an interview with the applicant, and ultimately issuing a decision by an Asylum Officer adjudicating the asylum claim." (*Id.* ¶ 13). Plaintiff contends that "[n]early three and a half years have passed since [he] applied for asylum, yet USCIS has not adjudicated the claim. In fact, USCIS has not even scheduled an asylum interview." (*Id.* ¶ 14). Plaintiff alleges that he "requested that [USCIS's] Newark Asylum Office place him on the short list for asylum interviews" in January 2023, but "Defendants provided no response or acknowledgement." (*Id.* ¶ 15). Plaintiff also alleges that Defendants' delay in adjudicating his application has caused him multiple forms of "irreparable harm[,]" including delays in his ability to move forward in the process of becoming a permanent resident and, ultimately, a naturalized citizen, an inability to obtain jobs that require lawful permanent residence, ineligibility for "certain forms of federal financial aid available to asylees," restrictions on his ability to "petition for eligible family

members to join [him] in the United States or gain lawful status in this country," and "the mental stress of fearing a return to Plaintiff's home country, and the persecution that awaits." (*Id.* ¶ 17).

In addition to his allegations of past delay, Plaintiff contends that Defendants will *never* process his asylum application in light of their policy for scheduling interviews. (*Id.* ¶ 16). Specifically, Plaintiff alleges that, as a result of Defendants' use of a "last in, first out basis" for scheduling asylum interviews, combined with the fact that "the number of new asylum claims filed on a daily basis is larger than the number of asylum interviews scheduled per day, Plaintiff's application will *never* be scheduled for an interview or fully adjudicated under Defendants' scheduling policies." (*Id.*).[1]

### C.    Procedural History

Based on the foregoing allegations, Plaintiff commenced this matter by filing a Complaint on January 13, 2025. (*See generally id.*). Plaintiff asserted two causes of action in that pleading. First, Plaintiff seeks relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, claiming that Defendants have unreasonably delayed adjudicating his asylum application. (*Id.* ¶¶ 18–22). Second, Plaintiff asks the Court to invoke the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to resolve that application. (*Id.* ¶¶ 23–28). Plaintiff requests, among other things, injunctive relief requiring Defendants to: (i) conduct his asylum interview within 30 days; and (ii) issue a decision on his asylum claim in the 30 days following that interview. (*Id.* at 7 (ECF pagination)).

---

[1]    Plaintiff further alleges that "Defendants do not in practice dedicate resources to reviewing cases out of the backlog," suggesting that, once an application enters the backlog, it will stay there indefinitely. (*Id.* ¶ 20).

Defendants have moved to dismiss Plaintiff's Complaint in its entirety, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (*See generally* Mov. Br.).[2] Plaintiff's motion is now fully briefed. (*See generally* Opp. Br. & Reply Br.).

## II.    DISCUSSION

### A.    Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached to and specifically relied upon or incorporated therein. *See Sentinel*

---

[2]      While Defendants contend that the Court lacks jurisdiction over Plaintiff's Mandamus Act claim, their argument centers on Plaintiff's alleged failure to establish an entitlement to relief on that claim. (*Id.* at 17–19). Indeed, Defendants argue that Plaintiff's claims fail under Rule 12(b)(6) "for the same reasons" underlying its jurisdictional argument. (*Id.* at 18, n.23). Defendants do not provide a separate analysis under Federal Rule of Civil Procedure 12(b)(1). (*Id.* at 17–19). Neither party suggests that the Court's analysis would be different under either Rule. For the sake of efficiency, the Court will therefore evaluate Plaintiff's Mandamus Act claim under the Rule 12(b)(6) standard.

*Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("'[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (internal quotation marks omitted))).  The Court may also consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))).

### B.    Plaintiff's Claim for Violation of the APA (Count I)

In his first cause of action, Plaintiff alleges that Defendants have either already failed or will ultimately fail to adjudicate his asylum application in a reasonably timely manner, as required by the APA.  (Compl. ¶¶ 18–22).  Specifically, Plaintiff contends that the existing delay (approximately 3.5 years at the time he filed the Complaint) is already "28 times the instructive deadlines set out by both Congress and DHS for performance of these duties."  (*Id.* ¶ 21).  Plaintiff further alleges that Defendants' delay is unreasonable because his asylum interview "will *never* be scheduled under current policies."  (*Id.*).

The APA provides a cause of action where agency action is unreasonably delayed.  *See* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter

5

presented to it.").  The APA further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).  The parties agree that, when determining whether Defendants' delay has been sufficiently "unreasonable" to support a claim under the APA, the Court must apply the four-factor balancing test that the United States Court of Appeals for the Third Circuit articulated in *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998).  (*Compare* Mov. Br. at 12–17, *with* Opp. Br. at 12–18).

In *Oil*, the Third Circuit directed courts to examine the following four factors when considering whether an agency's action is "unreasonably delayed" for APA purposes:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act.  Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action.  Third, the court should assess the consequences of the agency's delay.  Fourth, the court should consider any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

*Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123 (citations omitted); *see also Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns. Comm.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth similar factors for reasonableness under the APA).[3]  Both sides argue that the *Oil* factors fall in their favor.  (*See* Mov. Br. at 12–17; *see also* Opp. Br. at 12–18).  As explained below, however, the Court finds that each factor supports Defendants.[4]

### i.    The Length of Time Elapsed

First, the Court looks to the length of time that has elapsed since the agency came under a

---

[3]    While courts outside of the Third Circuit use other tests to evaluate APA claims (e.g., the "*TRAC* factors"), the relevant considerations are sufficiently similar that such decisions "may be considered persuasive authority." *Aydin v. Zeleke*, No. 24-6253, 2025 WL 3499246, at *6, n.12 (E.D. Pa. Dec. 5, 2025).

[4]    Here, the Court finds that the facts alleged in the Complaint are more than sufficient for the court to decide the unreasonable delay claim at the motion to dismiss stage.  *See, e.g., Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *2–4 (D.N.J. Feb. 23, 2022) (applying Third Circuit's *Oil* factors and granting motion to dismiss).

duty to act.  *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123.  Defendants argue that their current delay is not unreasonable under the relevant case law, (Mov. Br. at 10–14), and that Plaintiff's contention that Defendants will never adjudicate his asylum application in insufficient because "[c]ourts consider unreasonable delay claims not by crediting Plaintiff's worst-case scenario forecast but by determining the amount of time an application was pending before Plaintiff brought suit," (Reply Br. at 1).  This Court agrees.

The Court begins with Plaintiff's argument that Defendants will never get around to processing his application, given their "last in first out" policy for scheduling interviews, and that an indefinite delay would be facially unreasonable under the APA.  (Opp. Br. at 7–9).  As the Third Circuit made clear in *Oil*, unreasonable delay claims under the APA are backward-looking, such that they require the Court to consider the length of the *actual* delay at issue when balancing the relevant factors.  *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123 ("First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act.").  Even accepting Plaintiff's factual allegations regarding the ultimate futility of the "last in first out" process as true, the Court must still evaluate Plaintiff's APA claim based on the actual delay in his case.  *Id.*  Plaintiff has not cited any case law from the Third Circuit (either decisions from the Court of Appeals itself or from District Courts within the Circuit) interpreting *Oil* and suggesting otherwise in the asylum context.  (*See generally* Opp. Br. at 7–9).  Nor is the Court aware of any.  The Court must therefore focus its analysis on Defendants' actual delay in processing Plaintiff's application.

Here, Defendant USCIS confirmed receipt of Plaintiff's asylum application on July 29, 2021.  (Compl. ¶¶ 1 & 12).  At the time Plaintiff filed the Complaint, his application had been pending for "nearly three and a half years."  (*Id.* ¶ 20).  As nothing in the record suggests that

Plaintiff's application has been resolved in the interim, the Court assumes that it remains pending to date, such that it has remained outstanding for nearly four and a half years as of the date of this Opinion.  The Supreme Court, however, has held that evidence of the passage of time cannot, standing alone, support a claim for unreasonably delayed administrative action.  *Immigr. & Naturalization Servs. v. Miranda*, 459 U.S. 14, 18–19 (1982).  Moreover, as other courts (both in this District and beyond) have recognized, "[t]he case law, without drawing any bright lines, has found that delays of three to five years are not unreasonable."  *Jamoussian*, 2022 WL 538424, at *2 (citing cases); *Elezaj v. Mayorkas*, No. 2:24-00935, 2025 WL 368877, at *8 (D.N.J. Feb. 3, 2025) ("The Court is persuaded by case law from this District and across the country in finding a four-year delay reasonable, although understandably frustrating."); *Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *10 (D.N.J. Mar. 4, 2024) (finding that delay of 18 months fell within the bounds of delay that other courts have found reasonable of between three and five years); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding a delay of almost five years not unreasonable); *De Oliveira v. Barr*, No. 19-1508, 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) (noting that delay under four years was not unreasonable).  Because the delay in this case falls well within the bounds of delays that other courts have found reasonable, the Court finds that the first *Oil* factor weighs in Defendants' favor.

### ii.    The Delay Judged Against the Context of 8 U.S.C. § 1158(d)

Second, the Court looks to the reasonableness of the delay in the context of the statute authorizing the agency's action.  *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123.  As already discussed, the INA specifies a timetable promoting the prompt adjudication of asylum applications.  8 U.S.C. § 1158(d)(5)(A)(ii)–(iii).  Yet, Congress expressly declined to create any substantive or procedural right to enforce adjudication of an asylum application within those

timeframes. *Id.* § 1158(d)(7). Accordingly, the timetables contained in § 1158(d)(5)(A) do not support the argument that Defendants' adjudication of Plaintiff's asylum application has been unreasonably delayed, as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables "render[s] them non-binding." *Baisheng Chen v. Wolf*, No. 19-9951, 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020); *see also Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020) (declining to "ascribe much significance to th[e] timetable [provided by § 1158(d)]" because the timetable "is not mandatory."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1097 (S.D. Cal. 2019) ("While the statutory guidelines provide a clear expectation that the initial interview should commence within 45 days—with a final adjudication to be completed within 180 days—the plain language of 8 U.S.C. § 1158(d)(5)(A) clarifies that the timing requirements are not mandatory."). As such, the Court finds that the second *Oil* factor also favors Defendants. *Ahmad v. U.S. Citizenship & Immigr. Servs.*, No. 23-3332, 2024 WL 3272832, at *6, n.10 (D.N.J. July 2, 2024)

### iii.    The Consequences of Defendants' Delay

Third, the Court looks to the consequences of Defendants' delay in adjudicating Plaintiff's asylum application. *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123. Here, Plaintiff alleges that Defendants' delay has caused him several forms of harm, including delays in his ability to move forward in the process of becoming a permanent resident and, ultimately, a naturalized citizen, an inability to obtain jobs that require lawful permanent residence, ineligibility for "certain forms of federal financial aid available to asylees," restrictions on his ability to "petition for eligible family members to join [him] in the United States or gain lawful status in this country," and "the mental stress of fearing a return to Plaintiff's home country, and the persecution that awaits." (*Id.* ¶ 17). In short, Plaintiff alleges harm from the delayed receipt of potential benefits

as well the associated uncertainty and stress he has endured as a result. While the Court is certainly empathetic to Plaintiff's position and can readily understand how several years of waiting might take a toll on an asylum applicant, it agrees with the other courts that have recognized that "the painful consequences of [] delay are inherent in our immigration system." *Azam*, 2024 WL 912516, at *10; *see also Fangfang Xu*, 434 F. Supp. 3d at 54 (noting that although the plaintiff asserted she is not receiving the full rights she is entitled to as a seeker of asylum who has a meritorious claim, "this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved."); *Liuqing Zhu v. Cissna*, No. 18-9698, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (stating that an applicant's inability to plan her future or travel outside of the United States constituted risk that was "inherent in the process of seeking asylum").

Moreover, the Court cannot "compel agency action where the result would be merely to expedite the consideration of a plaintiff's request ahead of others." *Azam*, 2024 WL 912516, at *10 (internal quotation marks and citation omitted). This is particularly so given that many asylum applicants do not have the resources to try and skip the line, so to speak, via litigation. *See Fangfang Xu*, 434 F. Supp. 3d at 55 ("[G]ranting relief to [p]laintiff, an asylum petitioner who engaged the help of legal counsel to bring this suit, might have the perverse effect of incentiviz[ing] defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court." (internal quotation marks and citation omitted)). Further, as Defendants point out, the law prohibits Plaintiff's removal from the United States while his application is pending and also permits him to apply for employment authorization during that period. (Mov. Br. at 15 (citing 8 U.S.C. § 1158(d)(2); 8 C.F.R. §§ 208.7(a)–(b), 274a.13(a)(2),

274a.12(c)(8) & *Fangfang Xu*, 434 F. Supp. 3d at 54)).  Accordingly, the Court finds that this factor also weighs against a determination of unreasonable delay.

### iv.    Administrative Difficulties

Fourth, the Court considers "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources." *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123.  Here, nothing in the Complaint plausibly establishes that Defendants' delays have resulted from anything other than limited administrative resources and a large caseload of outstanding asylum applications.  As other courts in this district have recognized, "[u]nder such circumstances, to grant relief would accomplish little beyond pushing one applicant ahead of others equally deserving, scrambling agency priorities[,] and incentivizing litigation." *Jamoussian*, 2022 WL 538424, at *3; *see also Fangfang Xu*, 434 F. Supp. 3d at 55 ("The effect of leapfrogging [p]laintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."); *Pesantez v. Johnson*, No. 15-1155, 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) ("[T]he facts of this case do not counsel in favor of a remedy that would, if it did anything, move plaintiff's application to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication.").  Further still, [a] court's perception of the equities in one case is no substitute for the agency's expertise in allocating its resources overall." *Jamoussian*, 2022 WL 538424, at *3; *Azam*, 2024 WL 912516, at *11 ("Considering the broad statutory deference owed to the State Department in processing visa applications, the Court will not wade into [d]efendants' internal adjudicatory processes for determining how to process the mountain of visa

applications more efficiently."). Accordingly, the Court finds that the fourth *Oil* factor also weighs against a finding of unreasonable delay.

In sum, Plaintiff has failed to state a claim under the APA on the grounds that Defendants unreasonably delayed the processing of his asylum application. *See Xiaobin Xu v. Nielsen*, No. 18-2048, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (concluding that the plaintiff failed to state a claim for unreasonable delay where his asylum application had been pending for nearly five years). The Court thus grants Defendants' motion to dismiss Plaintiff's APA claim. This dismissal is *without prejudice* to renewal, should Plaintiff's applications remain pending for an unreasonable period. *Konde v. Raufer*, No. 23-4265, 2024 WL 2221227, at *5 (S.D.N.Y. May 16, 2024).

### C.    Plaintiff's Mandamus Act Claim (Count II)

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an exceptional remedy that can only be granted if a plaintiff has exhausted all other remedies. *Temple Univ. Hosp., Inc. v. U.S. Dept. of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021). To qualify for mandamus relief, a petitioner must show three elements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* (citing 33 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Judicial Review* § 8312 (2d ed. Apr. 2021 update)). The Third Circuit has explained that these elements are jurisdictional. *Id.*

Here, Plaintiff alleges that he is entitled to mandamus relief because Defendants failed to adjudicate his asylum application in a reasonably timely manner. (Compl. ¶¶ 24–27; Opp. Br. at

21).[5]  Plaintiff cannot pursue a Mandamus Act claim, however, where an "adequate alternative remedy exists." *Temple Univ. Hosp., Inc.*, 2 F.4th at 132 (finding that mandamus jurisdiction statute did not provide a potential basis for subject-matter jurisdiction because "[plaintiff] ha[d] an adequate alternative remedy through administrative appeal to the Provider Reimbursement Review Board.").  Thus, as other courts have recognized, because an alternative remedy is available to Plaintiff under the APA (i.e. a claim that Defendants failed to adjudicate their asylum applications in a reasonably timely manner) this Court must dismiss his Mandamus Act claim.  *See Sharkey* v. *Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that a mandamus claim should be dismissed where it duplicated claims brought under the APA); *Fangfang Xu*, 434 F. Supp. 3d at 56; *Konde*, 2024 WL 2221227, at *5; *Arabzada v. Donis*, No. 23-0655, 2024 WL 1175802, at *5 n.1 (D.D.C. Mar. 19, 2024); *cf. Cohen v. Jaddou*, No. 21-5025, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (dismissing mandamus claim in an action where the plaintiff sought to compel adjudication of his green card application because an adequate remedy was available under the APA and thus "mandamus relief [was] not available").  This is true even though, in this circumstance, Plaintiff has "failed to adequately plead that alternative remedy." *Cohen*, 2023 WL 2526105 at *7; *see also Zengin v. Mayorkas*, No. 24-2196, 2025 WL 337594, at *5 (D.N.J. Jan. 29, 2025) ("As other courts have consistently held, this alternative remedy under the APA precludes a finding of subject matter jurisdiction over the mandamus claim, even if the APA claims themselves are not adequately pled.").[6]

---

[5]      Indeed, citing Defendants' Moving Brief, Plaintiff argues:  "As Defendants acknowledge, 'the evaluation of [Plaintiff's] mandamus claim' will turn on . . . essentially the reasonableness analysis of the APA claim.  Thus, Plaintiff's relief will turn on the issue of the reasonableness of the delay whether his claims proceed under the APA or the Mandamus Act."  (Opp. Br. at 21 (citation modified)).

[6]      Because Plaintiff's Mandamus Act claim fails on the "alternative remedy" ground, the Court need not address whether his claim meets the other jurisdictional requirements.  *Temple Univ. Hosp., Inc.*, 2 F.4th at 132 (limiting discussion of potential subject matter jurisdiction under the APA to the determination that an alternative remedy existed).

As Plaintiff has not established a plausible entitlement to relief under the Mandamus Act, the Court must dismiss the Second Count of his Complaint *without prejudice*.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss, (D.E. No. 15), and dismisses Plaintiff's Complaint *without prejudice*.  An appropriate Order accompanies this Opinion.

Date:  January 9, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**